No. 11,295.

NEW ORLEANS, FORT JACKSON & GRAND ISLE RAILROAD COMPANY
vs. HORACE B. TURCAN.

1. In cases of flood, as in those of conflagration, services rendered voluntarily to preserve another man's property from destruction are presumed to be gratuitous and give no cause of action.

2.  Under the present levee system of the State the riparian proprietor upon
whose property a crevasse has occurred is not legally bound to close the same
or to rebuild the broken levee. When a third person voluntarily furnishes
materials and pays for labor in aid of closing the break, he can not call upon
the owner of the land to reimburse to him his expenditures. To recognize such
a right would be to practically return to the old system.

APPEAL from the Twenty-second District Court, Parish of Plaque-
mines.   *Livaudais, J.*

*James Wilkinson* for Plaintiff and Appellant:

In May, 1892, it was the legal duty of the defendant to keep the levee fronting his
Happy Point plantation in proper order, preservation and repair. Ordinances
Police Jury Parish of Plaquemines; Act 84 of 1884; Barrow vs. Hepler, 34 An.
362; Bass vs. State, 34 An., p. 503; Act 88 of 1880; Act 104 of 1882; Slidell vs. Grand-
jean, 111 U. S. 321; 8th Howard, 66; Rev. C. C., Articles 665, 646.

Where the defendant has established a dangerous agency in a levee, such as a rice
flume, he is held in seasons of very high water to greater care in seeing that all
necessary precautions are taken to avoid a crevasse. Act 143, Sec. 11, of 1890.

Where a crevasse has occurred through the gross fault and neglect of the most
ordinary care, by defendant, and plaintiff has closed the same, thereby saving
the property of defendant, and relieving him from liability for the immense
damage his fault would have caused, he must reimburse plaintiff his reason-
able outlay as *negotiorum gestor* in closing said crevasse, and that irrespective
of whether plaintiff was saved from great loss or not by said closure, since the
crevasse occurred through the gross negligence of defendant. Police Jury vs.
Hampton, 5 N. S. 391; 2d Robinson, 139; 4 An. 22; 2 An. 146; 8 An. 68; 10 An. 395; 16
An. 433; 26 An. 4; 36 An. 451; 41 An. 993.

Plaintiff is further entitled to a lien and privilege on the plantation whereon the
levee is situated. Rev. C. C. 3249, p. 4.

*E. Howard McCaleb* for Defendant and Appellee:

1.  Where plaintiff claims from the defendant damages for his negligence in fail-
ing to keep his levee in good order and condition, a duty alleged to be imposed
upon him by the law of the State and ordinances of the police jury then exist-
ing, and the law creating such supposed duty has been repealed before the in-
stitution of the suit, plaintiff's action must fail. The repealing law deprives
him of all remedy. Act No. 84 of 1884; Act No. 13 of 1892; 109 U. S. 285; 32 An. 709.
No law of the State or ordinance of the police jury of Plaquemines parish re-
quires the front proprietor to fascine his levee, and he is not liable for damages
for failing so to do, especially where it is shown to be usual and customary.

3.  A rice flume in the levee on the right bank of the Mississippi river, below the
lower line of "Live Oak Grove Plantation," in Plaquemines parish, is not con-
sidered a dangerous agency, being specially exempt from the operation of the
law prohibiting rice flumes. Section 11, Act No. 144 of 1890.

Especially where, as in this case, it is shown that the rice flume remained in
position during the crevasse, and where two other crevasses occurred in the
same vicinity about the same time during the high flood of the Mississippi
river.

Crawfish and muskrats are more dangerous agencies in the levees of Plaque-mines parish than rice flumes.

4.  The plaintiff, claiming damages in this case, owns and operates a railroad having its track four arpents from the Mississippi river; it was as much its duty as defendant's, the riparian proprietor, to keep the levee in repair. In closing a crevasse in the levee near its track it was protecting its own proper-ty, and can not visit the loss it has thus sustained upon the unfortunate de-fendant. The crevasse is not shown to have been occasioned by fault or neg-lect of defendant, and without fault there can be no liability. Nitro-glycerine Case, 15 Wall, 524.

5.  The defendant must be presumed to have been diligent in protecting his prop-erty. "Parceque chacun est présumé diligent à conserver son bien, ses effets, et d'ailleurs nec afflicto danda est afflictio." Duranton, Tome 17, No. 105.

6.  The crevasse was the result of *force majeure* exclusively and the services ren-dered by plaintiff in closing it are presumed to be gratuitous and give no cause of action, especially where, in doing so, it was protecting its own property. Section 25, Act of 1829, imposing upon front proprietors liability for damages for neglecting to care for and protect their levees was long since repealed. Leblanc vs. Pitman & Barrow, 16 An. 436.

7.  The war changed the legislation and jurisprudence which imposed on the front proprietors the duty of constructing and repairing their levees. Police Jury of Jefferson vs. Tardos, 22 An. 61.

8.  Upon the question of a negligence *vel non*, the verdict of the jury, approved by the judge *a quo*, is entitled to great weight and will not be set aside unless man-ifestly erroneous.

The Supreme Court always attaches great weight to the verdict of a jury on ques-tions of fact, the credibility of witnesses, etc. H. D., Vol. 1, p. 92, No. 1.

The opinion of the court was delivered by

NICHOLLS, C. J.  Plaintiffs allege that the defendant is the owner of the Happy Point plantation, in the parish of Plaquemines, on the right descending bank of the Mississippi river. That said land was protected on the river front by a magnificent levee built by the State of Louisiana, through the defendant as contractor, who was paid by the State for the building of the same. That under the laws of the State and under the ordinances of the police jury of the parish, author-ized by said laws, the legal duty of maintaining and keeping said levee in good order and repair was imposed on the defendant, the owner of said property. That though said levee was built of fresh earth and exposed somewhat to the river, the defendant negligently and imprudently failed to fascine the same or even put stakes or trash or any protection to said levee from the erosive action of the swells of the rising river, and although a storekeeper, conducting and carrying on a storekeeping business within fifty feet of said levee, he remained quiescent while during the months of April and

May the river washed the outside of this levee down until it became a mere shell. That with a nominal expenditure the levee, which was 2½ feet above the highest flood level of 1892, could have been protected, but through a reckless indifference and disregard of his duties toward himself and the public, the defendant grossly, carelessly, negligently and imprudently failed to protect said levee with either sacks of earth, planks, willow brush or rice straw, and as a result of his negligence aforesaid, a hole appeared in said levee just below his rice flume, on or about the evening of the 17th of May, 1892, when the river was very high. That before then, and then, the neighbors and laborers besought the defendant to repair and protect his levee and to stop at least said hole, which was then spouting water at a distance of about seventy-five feet from his store, filling the road with water, and being alongside of a rice flume was known to him to be doubly dangerous, as in case of a crevasse and the washing out of said flume the depth of in-rushing water would be very great. That said appeals to defendant were disregarded by him and wilfully, negligently, carelessly and wrongfully the defendant utterly failed, omitted and refused to either protect said levee or stop said hole or employ the necessary force or material to accomplish anything toward said end, and then on or about the 18th May, 1892, said levee, abandoned to its fate by its owner as aforesaid, gave way on the lower side of said rice flume, and the water rushed through with great force, flooding the plantation of the defendant and the surrounding country.

That the plaintiff corporation own and operate a railroad through the west bank of Orleans, Jefferson and Plaquemines parishes, which passes about four acres back of the crevasse on the Happy Point plantation.

That as soon as they became aware of said crevasse plaintiffs collected large quantities of materials, lumber and sacks and a large number of laborers and rushed them down to said crevasse on special trains.

That when plaintiffs took charge of said crevasse it was increasing rapidly and was of great depth, said rice flume washing out while the work was going on, and, if unchecked, it would have certainly washed down a large and valuable store and dwelling house and stables of defendant, and swept a deep hole through the front portion of his property.

That moreover, if allowed to increase, the said crevasse would have become a very large one, and have destroyed not only his own crops, but would have done over $100,000 damages to other crops, for which defendant would have been liable, as said crevasse occurred through his inexcusable and criminal negligence and want of care of his legal duty in the premises.

That only by the utmost diligence and strenuous efforts of plaintiffs was said crevasse closed, which, but for it, would be still running, inflicting untold disaster to the whole community.

That the closing of said crevasse cost the plaintiff corporation the sum of $5000, including the use of trains, for which they made no charge.

That plaintiffs annexed to their petition a statement of the amount of expenditures incurred by them in the closing of the said crevasse, and they averred that the amounts paid and charged therein were just and reasonable.

That defendant is liable to the plaintiffs for said amounts, first, because they had performed a work that it was the legal duty of the defendant to do, and had saved defendant's property and relieved him from heavy liability for heavy damages, and they are therefore entitled to reimbursement for said amount expended, from the defendant, with a lien and privilege on the said property.

That defendant is moreover liable to plaintiffs by reason of the fact that said crevasse occurred through the negligence and imprudence of defendant, and that if said crevasse would have been allowed to run plaintiffs' trains would have been stopped and plaintiffs greatly damaged by the aforesaid acts of omission of the defendant, and that the legal and honest expenses to prevent said damages were really damages sustained by them through the fault and neglect of the defendant as aforesaid, and for which he is liable to them. In view of the premises, they prayed that the defendant be condemned to pay them the sum of four thousand four hundred and seventy-three dollars (that being the amount shown on the exhibit or account annexed to the petition), with legal interest from judicial demand, with first lien and privilege on the property known as the Happy Point plantation.

The charges made in the account were for sacks, lumber, nails, straw, drayage, labor and board.

The defendant pleaded the general issue and prayed for trial by jury.

The case was tried by a jury, which, by a vote of 9 to 3, returned a verdict in favor of the defendant.

Plaintiffs moved for a new trial.

In passing upon the motion for a new trial the district judge said that the jury had been instructed as to the law applicable to the case, as shown by the written charge of the court on file, and instructed that they were the judges of the law as well as of the evidence and of the sufficiency of that evidence and the credibility of the witnesses. That the application was made upon the evidence alone, and particularly upon the question of negligence *vel non* on the part of the defendant, of which evidence submitted to them the jury are the best judges. For these reasons he refused the application and rendered judgment in favor of the defendant, rejecting plaintiffs' demand in conformity to the verdict.

The plaintiffs have appealed.

On or about the 18th May, 1892, a crevasse occurred on the Happy Point plantation, in the parish of Plaquemines, belonging to the defendant.

As soon as the plaintiffs ascertained that fact they dispatched a train with materials to the place in order to assist in closing the break. There is no doubt but that they contributed large amounts of materials and furnished a great deal of labor, which they paid for in aid of this result.

We are called on to say whether plaintiffs are entitled to recover this amount from the defendant.

The question before us is not whether the defendant was legally bound to have taken all proper steps for the repair and protection of the levee on his property—whether he performed this duty or not—whether if he did not do so the parochial authorities would have had the legal right to have had it repaired or protected either directly or through the instrumentality of third parties or third parties could of their own motion have done so with a legal right to reimbursement, for no claim is asserted for expenditures made in the repairing or protection of defendant's levee prior to its breaking. What is contended for is that expenditures made by the plaintiffs for the closing of the crevasse after it had taken place are recoverable from the owner of the property on which it occurred in an action as for moneys expended for his use and benefit.

We say in an action for moneys expended for his use and benefit, for that is the character of the one at bar.

No conventional contractual relations are advanced as having existed between the parties, and although averments are scattered through the petition to the effect that defendant was legally bound to have kept his levee in proper repair and properly protected— that he had violated that duty and that he was guilty of negligence, which led up to the crevasse as the cause thereof; and although the plaintiffs in one allegation declared that the amount of their expenditures were in reality damages sustained by them, we are of the opinion that plaintiffs' demand is not one *ex delicto* for damages.

The plaintiffs do not ground their cause of action upon the allegations we have referred to—they were inserted in the petition in support of the theory on which this case is based, which, as we have said, is that the moneys expended enured to the benefit of defendant and were therefore to be repaid.   They were doubtless suggested as useful for that purpose by the line of thought followed in Police Jury vs. Hampton, 5 N. S. 398.   The fact that plaintiffs in one of their allegations declare that the moneys expended by them were in reality damages to them can not change the character of the action as shown by the prayer and the pleadings as a whole, and where on the face of the papers the allegation to that effect is legally incorrect.

If the plaintiffs could recover from the defendant the amount demanded, they certainly could not do so under their pleadings, by way of damages.   Admitting as true the fact alleged that they did expend the amount claimed in closing the crevasse on defendant's land, that fact would not furnish legal evidence of damage *per se* to them to the same amount as resulting from the break—the outlays made would have no necessary legal connection with damages suffered—it would be no test of or measure of damages.

A third person may spend large amounts in closing a break in the levee on another's property perfectly consistently with the fact that neither the crevasse nor its long continuance would affect his interest to the amount of a single dollar.   Plaintiffs allege no damages outside of their expenditures.

Under the views we entertain of the action we confine our inquiry to the question whether plaintiffs can recover the amount sued for as for moneys expended for the use and benefit of the defendant.

At the very threshold we meet the rule announced in Watson vs. Ledoux, 8 An. 68, that "in cases of flood, as in those of conflagration, services rendered voluntarily to preserve another man's property

from destruction are presumed to be gratuitous and give no cause of action.''

Did the plaintiffs adduce any fact on the trial of this case to take it out of the rule so proclaimed? We think not.

Formerly the front proprietors on the Mississippi river were required to construct the necessary levees and embankments along their front lines on the margin of the river at their own cost, and in default thereof the required work might be done at their expense by the parochial authorities, but this court in Police Jury of Jefferson vs. Tardos, 22 An. 58, held that the act of the Legislature, approved February 17, 1866, repealed all former laws authorizing the parochial authorities to construct levees at the cost and expense of the front riparian proprietors of the lands leveed, and since its date the parish could not force them to pay the cost of a levee which she has ordered to be constructed along the front line and that no re-enactment of former laws had been made at the time of its decision. It further said: '' The legislation on the subject of levees since the late war has manifestly been framed with reference to the great changes which have been wrought in the condition of the country by the late war. The vast expense formerly imposed upon the riparian proprietors of building the heavy embankments necessary on the Mississippi, and to make continuous repairs upon them, would now, under the altered state of affairs in regard to capital and labor, be utterly ruinous. Hence the policy was a wise one to relieve that class of our people by a change of the laws and regulations in respect to the levee system.''

We have been referred to no law, and we know of none, altering the situation as stated in the case of Tardos, making it the duty of front riparian proprietors to build the levees on their front either when new levees become necessary by gradual changes and encroachments of the river or from the sudden sweeping away of the old levees by crevasses. That work has now to be done by the public authorities. If the defendant in this case could not have been legally called upon to close the break which had occurred on his plantation either by the public authorities or by his neighbors, the plaintiffs could not by going forward of their own accord and closing the work primarily at their own expense force the defendant to subsequently defray that expense—to recognize such a right on their part would be practically to return to the old system. If the plaintiffs have any

State ex rel. Lehman vs. Judge et al.

claim, legal or equitable as arising from the outlay made by them, it would be against parties other than the defendant.

The contention that the plaintiffs have through their action saved the defendant from damages for which he otherwise might be liable is predicated upon considerations remote and purely conjectural and speculative. They might under the former system have been adduced as an argument supporting and fortifying such a demand as was advanced by the Police Jury against Hampton (5 N. S. 393) under the then existing laws, but standing alone under the present condition of affairs they do not form the basis of a claim for reimbursement in this suit.

The conclusions we have reached and just announced do away with the necessity of our expressing any opinion upon the positions taken by the defendant that plaintiffs as operating a railroad running along the river and owning the lands upon which the tracks are laid on portions of the properties having fronts upon the Mississippi river would be as much bound for the repair and protection of the levees as the parties owning those properties directly upon the river, and that in making these expenditures plaintiffs were acting in their own name and for their own benefit and not for defendant.

For the reasons herein assigned it is hereby ordered, adjudged and decreed that the judgment appealed from be and the same is hereby affirmed.

Rehearing refused.